### No. 6761.

### FRANK M. TAYLOR vs. PRESTIDGE, GRAHAM & CO.

A factor having bound himself to make certain advances to a planter to enable him to raise his crop, and having taken collateral securities for the reimbursement of the sums to be advanced, is not released from his engagement by the fact that the planter's place is subsequently overflowed.   The refusal of the factor to continue the advances for that reason, will entitle the planter to damages.

But the planter having made a settlement with the factor and taken back the collateral securities without any protest or reservation, must be considered as having waived his claim for damages.

APPEAL from the Fifth District Court, parish of Orleans.   *Rogers,* J.

---

*C. L. Walker* and *Sam'l R. Walker* for Plaintiff and Appellee.

A contract between a commercial firm of cotton factors and a cotton planter, for the advancing and furnishing of supplies for a plantation in the alluvial country, must be held to contemplate and embrace the usual contingencies of flood and drouth.

In such contract any exception must be express, and cannot be implied, and no mental reservation on the part of the one not communicated at the time to the other can affect the contract.

When the amount or sum for supplies and funds is guaranteed by a deposit of ample collateral security to insure against any risk or contingency of flood, the eventuation of the very risk secured against cannot impair the contract.

The waiver of a legal right must be expressly declared in terms, and cannot be inferred nor implied. C. C. 2199, 2204.

Where the defendant claims a renunciation or waiver made by plaintiff, it must be specially pleaded.

### *Miller, Finney & Miller* for Defendants and Appellants.

The relation between the planter and the commission merchant, accompanied with the deposit by the planter of his note and collaterals, on which a discount and a corresponding credit is given to the planter by the merchant, does not oblige the merchant to pay drafts drawn by the planter after his place is overflowed, the crop "drowned out," and the preparations for the crop destroyed, the relations having been formed with reference to no such event as an overflow, the inducement for the merchant to pay the drafts, being to secure the commissions on the crop, and relying on the crop as well as the collaterals for the reimbursement of the advances represented by the discount.

In cases of contract, where damages are claimed for the breach, supposed profits based on speculative opinions cannot be allowed.

Nor are damages allowed, not foreseen and not the direct consequences of the breach.

In cases of contracts to pay money the breach involves interest only, the fixed measure of damages, and even if defendant were bound to pay the defendant's draft after the overflow, the protest would involve only the payment of interest. C. C. 1935.

---

The opinion of the Court was delivered by

Levy, J. Plaintiff claims of the defendants ten thousand dollars damages, which he alleges he has sustained at their hands, for the following reasons: That in February, 1874, he delivered to them his promissory note for $5567 58, payable to the order of defendants' firm on the 20th November, 1874, bearing eight per cent interest from maturity; that in accordance with agreement between them to that effect, Prestidge, Graham & Co. received said note as an equivalent for $5000 currency, cash, said firm discounting, or pretending to discount, the note and agreeing to place the sum of $5000 to the credit of plaintiff, and defendants then and there contracted to pay such drafts, orders or bills as plaintiff would wish or require during the planting season to the extent of said sum of $5000, this sum being considered as the proceeds of the said note, thus discounted; that plaintiff in order to secure the payment of said note, deposited with said firm certain notes of D. Muir & Co., secured by mortgage upon a valuable plantation in Carroll parish, which mortgage notes were for the aggregate sum of ten thousand dollars; that plaintiff was a cotton planter in the parish of Carroll, in this State, and defendants are engaged in the business of cotton factors, and said negotiations were for the purpose of enabling petitioner to carry on his plantation and make a cotton crop, and defendants were

Taylor vs. Prestidge, Graham & Co.

to act as his merchants, factors and brokers to the extent stipulated; that in accordance with the arrangement, plaintiff drew various drafts at various dates from the 19th February to the 11th March, 1874, amounting to the sum of $1746 82, which were duly paid by defendants out of said sum of $5000, before placed to his credit; that on or about the 17th of March, plaintiff having drawn a draft upon defendants for about $237 44, dated 11th March, 1874, the defendants suddenly and without notice to plaintiff, withdrew from said arrangement and violated said contract, and refused to accept and pay said draft, but caused the same to be protested, and thereafter continually refused to pay any demand of your petitioner, or to pay to him any amount of the balance of $5000, which had been, as above stated, placed to plaintiff's credit; that in consequence of said protest, plaintiff was materially injured in his credit, and in consequence of the violation of the contract by defendants, he became unable to complete his requirements for the season's planting, and was unexpectedly deprived of the means to carry on his plantation and produce the crop which he would have done with the means contracted for with defendants, and that the loss, damage and injury incurred by petitioner, directly in consequence of defendant's wrongful acts, amounts fully to the sum of $10,000; that on or about the 4th of November, 1874, plaintiff applied to defendants for his said note and account and collaterals, and defendants demanding payment of their account for the advances mentioned, amounting to $1888 16, plaintiff paid the account and received his said note and collaterals. Plaintiff prayed judgment against defendants, *in solido*, for said sum of $10,000 with legal interest from judicial demand, and for costs.

Defendants, in their answer, averred that by reason of the representations made to them by the plaintiff, that his crop of cotton for the year 1874, upon his plantation, in the parish of Carroll, would be four hundred bales, that it would be shipped to them for sale as commission merchants, and in consideration of the inducement of said crop, its shipment and the commissions thereon, held out by plaintiff, these defendants made advances to him for said plantation at various times up to 1st March, 1874, to the extent of $1746 82, and defendants admit that to secure said advances made by them, the plaintiff delivered to them the promissory notes referred to in his petition; that on the 1st of March, 1874, and for some time thereafter, the said plantation was completely overflowed, rendering it impracticable to make any crop thereon and none was made ; that upon this overflow occurring, they, as they allege had a right to do, declined plaintiff's solicitations for further advances, that subsequently the plaintiff paid the amount of said advances, viz, $1746 82, whereupon said promissory notes held by them to secure said amount were delivered to him and all transactions closed between them.

Defendants deny that they incurred any obligations whatever to make advances to plaintiff, or to pay his drafts, or that they are liable to him in any manner whatever, and pray for judgment in their favor.

The case was tried by a jury, and there was a verdict in favor of plaintiff for the sum of $5000, with legal interest from judicial demand and costs of suit. A motion for a new trial was made by defendants on the ground that the verdict was contrary to the law and the evidence, which motion was sustained and a new trial granted. On the second trial, the jury rendered a verdict similar to that rendered on the first trial, and defendants have appealed.

The evidence satisfies us that the contract, as alleged by the plaintiff in his petition, was entered into and agreed upon between the plaintiff and the firm of Prestidge, Graham & Co., the defendants. The defendants agreed to advance to plaintiff the sum of $5000, to enable him to make a crop of cotton in the year 1874, plaintiff estimating his probable crop at four hundred bales, and representing this to defendants, with the hope and expectation of receiving this crop and disposing of it in their business as commission merchants, defendants agreed to make the advances required, and in order to secure themselves fully in such advances, they required and obtained from plaintiff, in February, 1871, his note, payable in November, 1874, for an amount covering the $5000 and the discount thereon, and as further security received from plaintiff, as collateral, certain mortgage notes, signed by a third party, amounting to $10,000, and carried the amount of plaintiff's note, less the discount, to his credit on their books. We consider that defendants, relying not alone upon the probable crop, but also upon the collaterals held by them, were bound by a contract to advance to plaintiff the amount which they had placed to his credit on their books and which they held subject to his order. They had bound themselves unto plaintiff to that extent, and good faith required them to comply with their contract; otherwise, they would have taken an undue advantage of plaintiff. They would take all the chances in their own favor and leave the plaintiff at the mercy of their whim and caprice, if there was, as they allege, no *obligation* resting upon them to advance to, or pay the drafts of, plaintiff to the extent agreed upon, as evidenced by their placing the amount named to his credit. They had, probably, by entering into the agreement with plaintiff, put it out of his power to make arrangements with other merchants who would have held faith with him, or he might have made successful negotiations to enable him to obtain the necessary funds for carrying on his plantation by the use, in other hands, of the collaterals which he had placed with defendants.

We think plaintiff had a just cause of action, and the measure of damages for violation of contract to the extent of the injury and loss sus-

tained by him was a proper subject for legal inquiry and adjudication. One, however, may have rights which he can enforce, but these rights may also be abandoned, waived and surrendered. The evidence shows that after defendants' violation of their agreement and contract, they offered to return to plaintiff his notes on payment by plaintiff of the amount of the advances made to him, or if plaintiff would give them his note, payable in one year, for said amount, they would surrender said notes. This proposition or tender of settlement was made through plaintiff's attorneys, and no reply appears to have been then made thereto, either of acceptance or rejection. In November, 1874, the plaintiff, in person, called upon defendants' firm, paid the amount which had been advanced to him, including interest, and accepted his notes; the entry of the credit, etc., on defendants' books was then cancelled; no demand for damages was made; there was no protest by plaintiff, no representation by him that he made this settlement a payment with reservation of right to proceed against defendants for the violation of contract, but on the contrary, Hardeman testifies that, "in the fall of 1874 the plaintiff called at our office, said he felt very hard toward us for not helping him, but was willing to settle up and quit. We made out his account and he paid us the amount due and we surrendered to him his note and certain mortgage notes of D. Muir & Co. which he had left with us as collateral security for any drafts we should pay for him, exchanging receipts, and the *plaintiff expressed himself as fully satisfied with the final settlement.*" Charles E. Black (then a member of the firm of Prestidge, Graham & Co.) testifies : "When we stopped paying his drafts we wrote the plaintiff he could have his note for $5000 and the collateral mortgage notes on paying to us the amount due to us, $1746 82, he declined doing that until November, 1874, when he paid us our account, and we gave him up his notes. He made no claim or demand upon us, except to receive his notes on payment of our account, which we complied with." There is no evidence in the record disproving that above quoted, and nothing to contradict the statements that the settlement mentioned was made as testified to by Mr. Hardeman and Mr. Black. Plaintiff's own testimony was taken and he does not deny therein these statements. The settlement of the transactions between plaintiff and defendants is shown to have been full and complete, and in complete satisfaction of the respective claims of the several parties. The plaintiff made no reservation of any rights in the premises, no protest, or even intimation that he made the payment of the account of defendants solely for the purpose of getting possession of his collaterals, and the deduction from his own acts and conduct is to our minds clear that the settlement carried out his expressed intention to " settle up and quit," and that he was " fully satisfied with the final settlement." It is too late, now, for him to disavow this

settlement, especially as there is no allegation that it was made through error or in fraud. For these reasons we conclude that plaintiff's demand for damages should not have been sustained, and the verdict of the jury and judgment rendered thereon should be set aside.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and that there be judgment in favor of defendants and dismissing plaintiff's suit, and that the plaintiff, appellant, do pay the costs of both courts.

Rehearing refused.